**Howard L. WYATT,**
**Plaintiff–Appellant–Cross–Appellee,**

v.

**Bill COLE, et al., Defendants–Appellees,**

**and**

**Lloyd S. Jones, Wiley Magee & Mike Moore,**
**Defendants–Appellees–Cross–Appellants.**

No. 90–1058.

United States Court of Appeals,
Fifth Circuit.

April 17, 1991.

Rehearing and Rehearing En Banc
Denied May 30, 1991.

---

Jim Waide, Tupelo, Miss., Douglas M. Magee, Mendenhall, Miss., for Wyatt.

Michael F. Myers, Whitman B. Johnson, Steen, Reynolds, Dalehite & Currie, Jackson, Miss., for Jones and Magee.

Richard A. Compere, and R. Stewart Smith, Jr., Special Asst. Atty. Gens., Leslie Scott, Asst. Atty. Gen., Jackson, Miss., for the State.

Mark C. Baker, John M. Roach, Leonard McClellan, Asst. Atty. Gen., Jackson, Miss., for Robbins and Cole.

Before JOHNSON, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Howard L. Wyatt appeals a summary judgment order denying his claim for monetary damages under 42 U.S.C. § 1983 and awarding less than his requested attorneys fees under 42 U.S.C. § 1988. We find that monetary damages are barred by the defendants' immunities and that the fee award against the state was not clearly erroneous, but remand to the district court for the calculation of a reasonable fee award against defendant Bill Cole.

## I.

Howard L. Wyatt and Bill Cole are former business partners. On July 25, 1986, with the assistance of his attorney, John Robbins II, Cole filed a complaint in replevin against Wyatt to the Circuit Court of Simpson County, Mississippi, accompanied with a replevin bond of $18,000. Cindy Jensen, a deputy of County Clerk Wiley Magee, then issued a writ of replevin. Circuit Judge Jerry Yeager signed an order directing the county sheriff to execute the writ of replevin several days later. Sheriff Jones, Deputy Sheriff Smith, wrangler Ray Roberts, and several others subsequently seized 24 head of cattle, a tractor, and parts on July 29 and 30, 1986. The writ and summons were served on Wyatt on July 31, 1986. Several months later, on October 3, 1986, Judge Yeager entered an order dismissing the writ, continuing the replevin bond in force, and ordering the immediate restoration of Wyatt's property. Judge Yeager dismissed the action without prejudice on September 3, 1988, although Cole had not yet complied with the October 3, 1986, order. Mississippi's replevin under bond statute, Miss.Code Ann. § 11–37–101,[1] prescribed this procedure.

Wyatt filed this suit under 42 U.S.C. § 1983, 28 U.S.C. § 2201, and several state statutes, in July of 1987. When Mississippi filed as an amicus curiae, Wyatt added the state as a defendant, later substituting Attorney General Moore in his official capacity for the state.

The district court declared § 11–37–101 unconstitutional on April 13, 1989, 710 F.Supp. 180, and ordered Wyatt to detail the claims against each defendant by moving for summary judgment. Wyatt did so, requesting damages and attorneys fees from Cole and Robbins, Jones, Smith, Magee, and Jensen, in their official capacities, and Simpson County, alternatively from Moore in his official capacity. The district court granted summary judgment against Cole for any damages accruing after April 14, 1989, denied summary judgment against Robbins, and dismissed the claims against Simpson County, Jones, Smith, Magee, Jensen, and Roberts.

After a jury found no actual damages, Wyatt moved for nominal damages and attorneys fees against Cole, Robbins, and Simpson County, and for attorneys fees against Moore in his official capacity. The district court found Mississippi liable for fifty percent of the fees earned for work before it declared § 11–37–101 unconstitutional, but found the remaining defendants were not liable for any damages or fees.

Defendants do not appeal the declaratory judgment.[2] Wyatt seeks monetary dam-

---

1. At the time of the relevant events in this case, the Mississippi replevin statute provided as follows:

 If any person, his agent or attorney, shall file a declaration under oath setting forth:
 (a) A description of any personal property;
 (b) The value, thereof, giving the value of each separate article and the value of the total of all articles;
 (c) The plaintiff is entitled to the immediate possession thereof, setting forth all facts and circumstances upon which the plaintiff relies for his claim, and exhibiting all contracts and documents evidencing his claim;
 (d) That the property is in the possession of the defendant; and
 (e) That the defendant wrongfully took and detains or wrongfully detains the same; and shall present such pleadings to a judge of the supreme court, a judge of the circuit court, a chancellor, a county judge, a justice of the peace or other duly elected judge, *such judge shall issue an order directing the clerk of such court to issue a writ of replevin* for the seizure of the property described in said declaration,

 upon the plaintiff posting a good and valid replevin bond in favor of the defendant for *double the value of the property* as alleged in the declaration, conditioned to pay any damages which may arise from the wrongful seizure of said property by the plaintiff ...
 Miss.Code Ann. § 11–37–101 (West 1988 Supp.) (emphasis added).

2. The district court concluded that § 11–37–101 was unconstitutional because it provided "no discretion to the judge to deny a writ of replevin on presentation of a complaint in the statutory form." This result was mandated by *Johnson v. American Credit Co. of Georgia,* 581 F.2d 526 (5th Cir.1978), a case involving a Georgia prejudgment attachment statute, and four Supreme Court cases. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

ages from the private defendants, Cole and Robbins, and attorneys fees from both the private defendants and the state of Mississippi. He waived his claims against the county defendants individually below and, at oral argument before this court, conceded that those defendants are not liable in their capacities as county officials.[3]

## II.

 Based on our opinion in *Folsom Inv. Co., Inc. v. Moore,* 681 F.2d 1032, 1037 (5th Cir.1982), the district court found that Cole and Robbins were entitled to a good faith immunity from damages accrued before it declared § 11–37–101 unconstitutional. In *Folsom,* we held that "a § 1983 defendant who has invoked an attachment statute is entitled to an immunity from monetary liability so long as he neither knew nor reasonably should have known that the statute was unconstitutional." [4]

Wyatt contends that *Folsom* is inconsistent with *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), where the Supreme Court held that private defendants accused of conspiring with a judge were not entitled to a derivative immunity. In *Folsom,* however, we stated quite clearly that the immunity of private defendants is not derivative, but rather is independent and functional:

> The private party who invokes a presumptively valid attachment law is not entitled to immunity because the officer executing it is. Rather, quite independently, the private party is entitled to an immunity because of the important pub-

lic interest in permitting ordinary citizens to rely on presumptively valid state laws, in shielding citizens from monetary damages when they reasonably resort to a legal process later held to be unconstitutional, and in protecting a private citizen from liability when his role in any unconstitutional action is marginal.

Wyatt also argues that, even if Cole and Robbins were entitled to a good faith immunity under *Folsom,* their actions here were not in good faith. He points out that § 11–37–101 was clearly unconstitutional after *Johnson v. American Credit Co. of Georgia,* 581 F.2d 526 (5th Cir.1978), where we struck down a similar Georgia prejudgment statute. This contention gives us some pause, but it is not so clear as Wyatt would have it. Indeed, as late as *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 2756, 73 L.Ed.2d 482 (1982), the role of a private actor invoking state attachment procedure was legally uncertain. *Folsom,* in turn, left the precise contours of the immunity to future cases. Specifically, *Folsom* was unwilling to conclude that "a private citizen should be charged with the same degree of knowledge as to whether a statute or practice is unconstitutional that would be attributed to a public official." *Id.* at 1037. Today, we squarely face that issue.

We need not conclude that a private actor is entitled to rely on any statutory relic, regardless of its current absurdity, in order to conclude that Cole and Robbins, as nongovernmental actors, were entitled to rely on § 11–37–101 until the district court de-

---

Mississippi has since amended its replevin statute to conform to *Johnson. See* Miss.Code Ann. § 11–37–101 (West 1990 Supp.).

**3.** *See Echols v. Parker,* 909 F.2d 795 (5th Cir. 1990); and *Bigford v. Taylor,* 834 F.2d 1213 (5th Cir.1988).

**4.** The Eighth, Tenth, and Eleventh Circuits have also granted qualified immunity to private individuals. *See Buller v. Buechler,* 706 F.2d 844 (8th Cir.1983); *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.,* 844 F.2d 714 (10th Cir.1988); and *Jones v. Preuit & Mauldin,* 808 F.2d 1435 (11th Cir.1987). The First Circuit reached a contrary result in *Downs v. Sawtelle,* 574 F.2d 1 (1st Cir.1978). The Sixth Circuit rejected quali-

fied immunity for private individuals but recognized a good faith defense in *Duncan v. Peck,* 844 F.2d 1261 (6th Cir.1988). The Ninth Circuit initially stated that "there is no good faith immunity under section 1983 for private parties," but in a later opinion, appeared to retreat from that position. *Compare Howerton v. Gabica,* 708 F.2d 380 (9th Cir.1983); *with Thorne v. City of El Segundo,* 802 F.2d 1131, 1140 n. 8 (9th Cir.1986). The Supreme Court expressly left the issue open in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 942 n. 23, 102 S.Ct. 2744, 2756 n. 23, 73 L.Ed.2d 482 (1982). *See generally* Note, *Private Party Immunities to Section 1983 Suits,* 57 U.Chi.L.Rev. 1323 (concluding that good faith immunity should be available to private defendants).

clared it unconstitutional. Rather, we say only that liability on these facts would undercut the purpose of the immunity, promoting lawfulness by allowing citizens the reasonable sanctuary of the law. It is true that the statutory scheme was in legal jeopardy. It is also true that Cole and Robbins acted with the assistance of government officials who were giving full force and effect to the statutory procedure. The presence of these officials contributed to the reasonableness of the private actors' conformity to the statutory procedure. In sum, the question is close, but on balance we are persuaded that reliance upon the statute by the private actors was not an act of unreasonable ignorance. The first line of responsibility rests with the legislative body enacting the statute. The next line of responsibility rests with the enforcing officials. When the legislature has not repealed, and executive and judicial officials are still enforcing a statute, it is not unreasonable for private actors to fail to quickly comprehend a developing body of doctrine that portends trouble for its constitutionality.[5]

### III.

The district court concluded that Wyatt had prevailed on the central issue in the case, the constitutionality of § 11–37–101, and awarded Wyatt's attorneys $16,588.15 in fees under § 1988, to be paid by the state of Mississippi. Wyatt had requested a much larger fee award, but the district court limited the award to compensate Wyatt's attorneys only for their success on the constitutional issue.

#### A. *Qualified immunity, sovereign immunity, and § 1988.*

■ Wyatt argues that Cole and Robbins should be held jointly liable for his attorneys fees. But the same good faith immunity that insulates the private defendants from monetary damages also forecloses lia-

bility for attorneys fees. *Familias Unidas v. Briscoe*, 619 F.2d 391, 406 (5th Cir.1980); *see also Clanton v. Orleans Parish School Bd.*, 649 F.2d 1084, 1103 (5th Cir.1981); and *Universal Amusement Co., Inc. v. Vance*, 559 F.2d 1286, 1301 (5th Cir.1977), *aff'd on other grounds*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); *accord Stevens v. Gay*, 792 F.2d 1000, 1003 (11th Cir.1986). "[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985). Cole and Robbins are thus immune from liability for attorneys fees for all acts taken before the district court declared § 11–37–101 unconstitutional.

■ Mississippi stands on different footing. Attorney General Moore, Sheriff Jones, Deputy Sheriff Smith, and Clerk Magee were sued in their official capacities; good faith immunity is not available as a defense in official-capacity actions. The state is entitled only to its immunity under the Eleventh Amendment and as a sovereign. *Graham*, 473 U.S. at 167, 105 S.Ct. at 3105. As the Supreme Court explained in *Hutto v. Finney*, 437 U.S. 678, 693, 98 S.Ct. 2565, 2574, 57 L.Ed.2d 522 (1978), Congress has plenary power to abrogate the immunity of the states under the Eleventh Amendment. Congress intended to authorize awards of attorneys fees under § 1988 to prevailing parties in official-capacity actions even when the state is immune from damages under § 1983. *Id.*; *see also Pulliam v. Allen*, 466 U.S. 522, 527, 104 S.Ct. 1970, 1973, 80 L.Ed.2d 565 (1984).[6]

#### B. *Judge Yeager, Sheriff Jones, and Clerk Magee as state agents.*

■ In a cross-appeal, Mississippi argues that Attorney General Moore was an im-

---

5. Although Robbins is an attorney, he is subject to the same standard of good faith as Cole because the relevant distinction is between persons acting privately and those acting for the state.

6. In contrast, fee awards against officials in their individual capacities are only appropriate when they acted in bad faith. *Finney*, 437 U.S. at 700, 98 S.Ct. at 2578.

proper party to the suit, as he did not contribute to the found constitutional violation. We need not reach this issue because the state's argument overlooks the fact that Yeager, Jones, Smith, Magee, and Jensen contributed to the violation by enforcing § 11–37–101. As we explained in *Echols v. Parker*, 909 F.2d 795, 801 (5th Cir.1990):

> A county official pursues his duties as a state agent when he is enforcing state law or policy. He acts as a county agent when he is enforcing county law or policy. It may be possible for the officer to wear both state and county hats at the same time, ... but when a state statute directs the actions of an official, as here, the officer, be he state or local, is acting as a state official.

*See also Bigford v. Taylor*, 834 F.2d 1213, 1222–23 (5th Cir.1988); and *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980).[7] As in *Echols, Bigford*, and *Familias*, § 11–37–101 commanded the actions of the county defendants; in fact, it was the statute's limit of Judge Yeager's discretion that undergirded the determination that § 11–37–101 was unconstitutional. Yeager, Jones, Smith, Magee, and Jensen acted as state agents, and Mississippi is liable.[8]

The state also contends that it is not liable for attorneys fees because it cannot be liable on the merits (citing *Graham* and *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). The problem with the argument is that Mississippi overstates *Will* "because 'official capacity actions are not treated as actions against the state.'" *Will*, 109 S.Ct. at 2311 n. 10 (citing *Graham*, 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14). *Graham* and *Will* were thus

no bar to the award of attorneys fees against the state.[9]

### C. *Wyatt's status as a prevailing party.*

■ We turn to whether Wyatt was a prevailing party. It is true that the district court declared § 11–37–101 unconstitutional, but it also denied Wyatt's damage claims. The judge below never ruled on the request for an injunction.

■ A declaratory judgment supports a fee award under § 1988 "if, and only if, it affects the behavior of the defendant towards the plaintiff." *Rhodes v. Stewart*, 488 U.S. 1, 109 S.Ct. 202, 203, 102 L.Ed.2d 1 (1988); *see also Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987). In *Rhodes*, the Court reversed an award of attorneys fees in an action challenging prison conditions because one of the plaintiffs had died at the time that the declaratory judgment was entered, and the other was no longer in custody. The Court reasoned that the declaratory judgment "afforded the plaintiffs no relief whatsoever," as the case became moot before the judgment was entered. This court relied on *Rhodes* in partially reversing an award of attorneys fees in *Jackson v. Galan*, 868 F.2d 165 (5th Cir. 1989), reasoning that the declaratory judgment did not compel the defendant, a county court clerk, to change his procedures.

The declaratory judgment in this case affected the behavior of Cole towards Wyatt by effectively requiring him to return the property seized. He is liable for attorneys fees accrued after the date of the declaratory judgment because he continued to hold Wyatt's property for several

---

7. *Echols* expressly distinguished the case relied on by the state, *Nash v. Chandler*, 848 F.2d 567 (5th Cir.1988).

8. In a letter to this court after oral argument, attorneys for the county contended that Wyatt cannot rely on *Echols* to hold the county officials liable for attorneys fees in their capacity as state agents because he expressly abandoned his claims against them in his brief to this court. We think that the reference in the brief is ambiguous at best, and we interpret it as an abandonment of his claims against the county officials only in their *individual* capacities and *not* in their official capacities as *state* agents.

9. In a separate cross-appeal, Simpson County asks that we modify the district court judgment to reflect that all attorneys fees are owed by the state, and none by the county. We believe that no modification is necessary, as both the district court's order and the accompanying memorandum opinion make it quite clear that all fees are owed by the state.

months thereafter.[10] Robbins, on the other hand, is not liable for attorneys fees because he performed no acts subsequent to the declaratory judgment that contributed to the constitutional violation. In contrast to *Rhodes* and *Jackson,* Wyatt also achieved a legal victory over the state. The county officials, as state actors, vigorously defended their actions under § 11–37–101 until the district court declared it unconstitutional. Wyatt succeeded in his claim that the statute was invalid and not to be adhered to. He was a prevailing party.

### D. *The size of the fee.*

Finally, Wyatt contends that the district court erred in calculating the fee award against Mississippi. The district court refused to award fees for work done after the date of the declaratory judgment and reduced, as excessive and duplicative, hours for time before the declaratory judgment by thirty percent, and by another fifty percent to account for limited success. We review the size of the fee award only for abuse of discretion. *See City of Riverside v. Rivera,* 477 U.S. 561, 572–73, 106 S.Ct. 2686, 2693–94, 91 L.Ed.2d 466 (1986); and *Nash v. Chandler,* 848 F.2d 567, 572 (5th Cir.1988).

The fee award was consistent with the Supreme Court's directives in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and *Texas State Teachers v. Garland Indep. School D.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). A district court may reduce the hours claimed to account for time expended on unsuccessful claims. This follows from defining a "prevailing party" as one who has "succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit.'" *Texas State Teachers,* 109 S.Ct. at 1486 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)).

The Court distinguished between two situations in an effort to guide the discretion of lower courts in *Hensley* and *Texas State Teachers.* When claims are based on different facts and legal theories, the district court should treat the claims as separate suits and award attorneys fees only for time expended on the successful claims. On the other hand, when the claims arise from a common core of facts and involve related legal theories, the district court should attempt to arrive at a reasonable fee award "either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff." *See Hensley,* 461 U.S. at 434–36, 103 S.Ct. at 1939–41; *Texas State Teachers,* 109 S.Ct. at 1492.

Wyatt's request for attorneys fees was of the second type. The district court chose an appropriate fee award both by identifying the time expended by his attorneys after the declaratory judgment and, in addition, by reducing the hours claimed before the declaratory judgment to account for his limited success.

Wyatt argues that the reduced fee award is inconsistent with *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), and *Nash v. Chandler,* 848 F.2d 567 (5th Cir.1988), but we find both cases distinguishable. In *Riverside,* the Court held only that a fee award need not be proportional to the amount of monetary damages recovered. There is a huge difference, however, between an unsuccessful claim and a small monetary recovery on a successful claim. In *Nash,* 848 F.2d at 572–73, we affirmed a fee award that included compensation for hours logged in pursuing unsuccessful claims that the district court believed were "highly relevant to [the plaintiff's] successful challenge to the statute" and "not so distinct from the successful claims so as to be severed for purposes of awarding attorneys fees." Here, the hours expended after the date of the declaratory judgment were severable. As to work prior to the declaratory judgment, we cannot say that the district court's decision to reduce the hours claimed by fifty percent was clearly erroneous, especially so with no detailed records.

**10.** We express no opinion on the size of a reasonable fee against Cole.

The judgment of the district court is AFFIRMED in part and, in part, REVERSED and REMANDED. We return the case to the district court for the calculation of a reasonable fee award against Cole.